MARGARO NAVARRO, Plaintiff and Appellant, *v.* COMPAÑÍA AZUCARERA "EL EJEMPLO," Defendant and Appellee.

No. 7465. Argued June 21, 1938.—Decided July 28, 1938.

*Burset & Pérez Pimentel* for appellant.  *González Fagundo & González, Jr.,* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

In this case the complaint alleged, in short, that the defendant was the owner of a railroad which at the place known as "La Bejuca" crosses the insular highway leading from Humacao to the village of Punta Santiago; that on April 29, 1931, the defendant was using the said grade crossing for the passage of its trains which transported sugar cane to its factory; that the defendant keeps a flagman charged with placing two steel cables which, upon being fastened to two gateposts on either side of the road, stop the public traffic while trains pass over the grade crossing; that at the time mentioned the plaintiff was standing on one side of the highway very close to the grade crossing, and that the employee of the company in charge of the grade crossing carelessly and negligently left the two steel cables coiled on the road and fastened at one end to one of the aforesaid gateposts; that between 3 and 4 o'clock in the afternoon, upon a motor bus passing over the said cables, one of them suddenly sprang, violently striking the plaintiff and fracturing his right leg, causing him great physical pain and leaving him permanently disabled. The plaintiff estimated at $10,000 the damages thus sustained and prayed for a judgment for that amount, with costs, disbursements, and attorney's fees.

The defendant denied for lack of information and belief that the alleged accident ever occurred and denied also the causing of the injuries on which the claim is based but admitted the other averments of the complaint. As a special defense, it set up that the complaint did not state facts constituting a cause of action.

Three years after the accident, on or about January 23, 1934, the case was tried, and on December 10 of the following year a judgment was rendered dismissing the complaint on the grounds stated in an opinion which, after summarizing the complaint and stating that its material allegations had been denied by the defendant, ends as follows:

"On the day set for the trial, the witnesses for both parties were heard and a view of the premises was taken.

"From the testimonial evidence of both parties, the conflict in which was resolved by taking into account all the various statements of the witnesses as the same were produced at the trial, and from the result of the view taken, the court is of the opinion that the essential averments of the complaint have not been proved, and therefore it concludes that the same must be dismissed, without costs."

From that judgment the plaintiff took the present appeal, and he has assigned three errors, claimed to have been committed by the lower court, as follows:

"*First:* The District Court of Humacao erred in holding that the essential averments of the complaint had not been proved.

"*Second:* The District Court of Humacao committed manifest error in weighing the evidence.

"*Third:* The judgment rendered by the District Court of Humacao is contrary to law and the evidence."

The three errors assigned by the appellant may be rendered to one, stated thus: The court committed manifest error in the weighing of the evidence.

The witnesses for the plaintiff were: José María Pérez, driver of the motor bus; Carmelo Rodríguez and Jesús Sánchez, passengers; the plaintiff; Dr. Enrique Matta; and the flagman Francisco Delgado. The first three corroborated in

every respect the testimony of the plaintiff, Margaro Navarro. They saw Navarro at the said place close to the highway; they saw the cables lying on the ground across the road, and they noticed when one of them became entangled underneath the motor bus, and all of them heard the shrieks of Navarro; they saw him on the ground, bleeding profusely from the right leg, unable to stand on it, and they put him in the motor bus and took him to a clinic in Humacao, where he received medical treatment from Dr. Enrique Matta.

Dr. Enrique Matta testified that at the time mentioned the plaintiff was brought to his clinic with a serious injury on the right leg; that there was a fracture of the tibia; that he did not amputate the leg but that he had to extract so many splinters from it that the leg would remain permanently disabled and that he could no longer stand on it.

The flagman, who at the time of San Ciriaco hurricane which occurred on August 8, 1899, was already 46 years old and therefore was 85 years of age on the day of the trial, testified in part as follows:

"Q. Have you any knowledge of any accident that occurred at that place La Bejuca on April 29, 1931?

"A. The only thing I remember. . . .

"Q. Do you know whether anything happened there on that day?

"A. I do not remember well.

"Q. Don't you know anything about that accident that occurred on April 29, 1931, at La Bejuca, while you were there as a flagman?

"A. Something may have happened, but I do not remember well.

"Q. Did you on that day see Margaro Navarro?

"A. Yes, Sir.

"Q. Where was he?

"A. He was coming from the Playa after work.

"Q. And if you saw him there, how is it that you do not remember anything?

"A. He was un acquaintance of mine.

"JUDGE. He was what?

"A. He was an acquaintance of mine.

"ATTORNEY PÉREZ PIMENTEL: Your Honor, we have brought the witness who at that time was an employee of Central Ejemplo in order to ascertain what sort of employment he had; that is all.

"ATTORNEY GONZÁLEZ FAGUNDO: The witness also must testify as to whether Margaro Navarro was there and whether anything happened.

"ATTORNEY PÉREZ PIMENTEL: The witness stated that Navarro was there, and as regards the accident the witness has stated that something may have happened but that he does not remember. Besides we do not want the witness to tell us what took place there.

"JUDGE: The witness stated that something took place there but that he does not remember well.

"ATTORNEY PÉREZ PIMENTEL: (To the witness) Did you talk with Navarro on that day?

"A. Yes, Sir.

"Q. Did he stop to talk with you?

"A. Yes, sir.

"Q. On which side of the road? On the right-hand side coming from La Playa?

"A. Yes, sir.

"Q. Where were you standing?

"A. On the edge of the ditch.

"Q. Do you know whether there were any cables there?

"A. Yes, sir.

"Q. How are they fastened?

"A. There is a post on one side and another post on the other side.

"Q. Were the cables fastened to the post on your side?

"A. I think they were, I do not remember well.

"Q. How were the cables placed?

"A. As I used to place them.

"Q. Did any motor bus pass by that place?

"A. Yes, sir.

"Q. What happened when the motor bus passed?

"A. A motor bus was coming this way and a car was going that way. The car passed and the motor bus came near the post and passed, and when the cable sprang I went into the drain ditch to catch it.

"Q. Do you remember whether the cable did anything to this man?

"A. I do not know.

"Q. Do you know which of the cables was thrown by the motor bus into the ditch?

"A. I do not know." (Tr. of Ev., pp. 44 and 45.)

As may be seen from the above-transcribed testimony, the flagman himself, notwithstanding his weak memory, assented that upon the motor bus passing over the cables one of them sprang and he had to go into the ditch in order to pick it up.

We have carefully read the transcript of the evidence and fail to find anything in the testimony of the witnesses for the plaintiff to question their veracity. Their answers are cate-gorical, without evasions or contradictions, and although there are certain discrepancies between them as to the exact time of the occurrence of the accident, the width of the highway, the distance between Navarro and the grade crossing, etc., etc., such discrepancies, far from weakening the probatory force of their testimony, strengthen the same, as they show that the evidence of the plaintiff had not been fabricated.

Every student of Evidence is acquainted with the classic experience of several persons who witness an accident and who afterwards, when reciting the facts, can not fully agree, even between two of them, in every detail. Moreover, it is of common knowledge the wrong notion of time and space generally found in uneducated witnesses; and the fact should not be overlooked, either, that in the instant case the witnesses gave their testimony three years after the accident occurred.

In our judgment, the evidence of the plaintiff supports *prima facie* the essential allegations of his complaint. Was it controverted by the defendant? Let us see. The witnesses for the defendant were: Mario Fuentes, Antonio Quintero, Francisco Rivera, and Miguel A. Burset.

*Testimony of Mario Fuentes:* He stated that he was a civil engineer and that he had been for fifteen or sixteen

years an employee of Central Ejemplo; that he used to make surveys, bridge projects, etc.; that at the place called "La Bejuca" Central Ejemplo maintained a crossing over the highway leading from Humacao to the seashore; that he made the project for the said crossing which was constructed under his supervision; that a few days prior to the trial he had drawn a plan of said crossing; that on the east side of the crossing and from gatepost to gatepost the road is 6.73 meters wide; that on the west side its width is 7.25 meters; that the width of the asphalted portion of the road on the east side is 4.20 meters and on the west side 4.20 meters; that from the asphalted roadway to the gateposts on the east side towards the left there is a distance of 1.23 meters and from the gatepost to the edge of the ditch the distance is 50 centimeters; that the distance between the eastern gatepost towards the left and the asphalted portion is 1.30 and between the gatepost and the edge of the ditch 60 centimeters; on the west side towards the left the distance between the edge of the asphalted roadway and the gatepost is 1.50 meters and between the gatepost and the edge of the ditch 50 centimeters; on the west and on the right-hand side there is 1.55 meters between the asphalted portion and the gatepost and 60 centimeters between the gatepost and the edge of the ditch; that the measurements are the same as when the gateposts were put in place; that the layout of the railroad track has not been changed; that the distance from the eastern gatepost on the right-hand side coming from the seashore to the eastern gatepost on the left-hand side is 6.73 meters; that the distance between the eastern gatepost on the right-hand side coming from the seashore and the western gatepost on the right-hand side is 9.66 meters; that the distance between the eastern gatepost on the left-hand side coming from the seashore to the western gatepost on the left-side is 8.60 meters. (The plan was submitted in evidence.)

On cross-examination the witness stated that the grade crossing was built in 1916; that the distances between the gateposts have not been changed.

*Testimony of Antonio Quintero:* He testified that he was an employee of the "Ferrocarriles del Este"; that he has known La Bejuca crossing for about fifteen years; that the condition of said crossing in 1931 was the same as now and also as when it was originally built; that no alterations have been made thereon; that the lay of the road has not been changed.

On cross-examination he testified that he was present when the gateposts were put in place; that he himself put them in place; that it was so long ago that he had forgotten the distance between them.

*Testimony of Francisco Rivera:* He testified that he had worked for the Central Ejemplo for fourteen years; that he knew Antonio Quintero who was an employee there before him; that he was traffic manager and track supervisor; that the duties of a track supervisor are to direct the movement of trains, to repair the tracks and keep them in good condition; to replace decayed ties with new one and to direct, in general, the traffic of trains; that the said tracks have always been in perfect condition under his supervision.

*Testimony of Attorney Miguel A. Burset:* That in 1931 he was the Municipal Judge of Humacao until August or the beginning of September; that he heard the testimony; that he heard the witnesses and investigated the accident suffered by Margaro Navarro; that after he examined the witnesses he took a view of the premises.

Let us now see whether the view taken could in any way controvert the evidence for the plaintiff. The report on the view reads as follows:

"On August 10, 1935, a view of the premises was taken in the instant case, the plaintiff appearing through his attorney, Miguel A. Burset, Esq., and the defendant being represented by Attorney Francisco González Fagundo.

"The court went to the place of the accident. From the gatepost near which the plaintiff was standing, according to the testimony, there hangs a cable which is stretched to take the place of a gate for the protection of the public whenever an engine is passing. The cable, with the folds caused on it by the service for which it has been placed there, is laid on the ground across the road. Two automobiles have passed over it at different places across the road without causing the cable to move either upwards or sideways. The cable before touching the ground and from the point where it is fastened to the gatepost follows an oblique direction as if forming one side of a right-angled triangle with the south vertex about four feet from the gatepost, precisely at the end of the paved portion of the road and the beginning of the pathway or northern side thereof."

The attorney for the plaintiff-appellant, when arguing upon the probatory value of the view taken in the present case, makes the following observations in his brief, which we transcribe, as we think that his reasoning and his apt remarks upon this question are correct:

"During the view two automobiles were driven over the cables, neither of which moved upwards or sideways. (P. 12 of transcript) Perhaps the court concluded that this circumstance contradicted plaintiff's evidence. If so, it committed a serious error. The fact that other automobiles have passed over the cables without the latter moving does not make it improbable that the accident occurred as stated by the plaintiff and his witnesses. We must bear in mind that on the day of the accident there were two cables lying on the road; that the motor bus passed over them both and yet it was only one of them that became entangled and sprang sideways hitting the plaintiff. We fail to understand how the judge of the lower court could expect the cable to spring again by driving two motor cars over it. Not even was there any use made of the same motor bus which José María Pérez drove on the day of the accident, or of a similar one. In order to reproduce the accident the court had to reproduce innumerable circumstances similar to those that caused the accident. This was not done, but on the contrary it was ordered that the two cables be laid across the road and that two touring cars be driven over them. The circumstances were not similar and the result could not be the same. The exact position of the cables, the spot where the wheels of the motor bus touched them, the position

of the iron hooks attached to the loose ends of the cables, the weight of the motor bus, the outside structure of its tires, the shape of the motor bus underneath, the condition of the road, and numberless other circumstances should have been reproduced by the court in order to cause the cable to spring as it did on the day of the accident. However, this was not done and if the court under such circumstances attached so much weight to its experiment there is no doubt that it committed a grave error."

It is evident that the view, as the same was taken, could not throw any light upon the case, and therefore it did not controvert in any way plaintiff's evidence.

In *Rogelia Caballero* v. *Eduardo González, ante,* p. 513, in referring to the weight to be given to uncontradicted testimony, when the evidence is not conflicting, we took occasion to quote, with approval the words of Mr. Justice Field in *Quock Ting* v. *United States,* 140 U. S. 417, 420, 35 L. ed. 501, as follows:

"Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced."

We have already stated that the evidence is not conflicting, since that of the defendant does not in any way tend to contradict the plaintiff's evidence; that the testimony of the witnesses for the plaintiff is positive, free from evasions and contradictions, and that although there may be noticed therein certain discrepancies on unimportant details, espe-

cially in regard to distances and time, such discrepancies rather militate in favor of the plaintiff. Nor is the theory advanced by the plaintiff and supported by his witnesses physically impossible or improbable. The judge of the lower court in his opinion fails to adduce any reason to warrant disregarding the plaintiff's evidence. He speaks of a conflict in the evidence that does not really exist and concludes by saying that, taking into account the various statements, and from the result of the view taken, which we already know, he finds that the plaintiff has failed to prove the essential averments of his complaint.

In our judgment, the trial judge did not have sufficient legal grounds for discarding the plaintiff's evidence. He ought to have given credence to it, and in failing to do so he committed a manifest error in weighing the same.

As the complaint states facts sufficient to constitute a cause of action, and in view of the conclusion reached by us regarding the evidence, it is proper that this court should reverse the judgment and render another in accordance with the facts and the law. Taking into account that the plaintiff at the time of the accident was a healthy man, since there is no evidence to the contrary; that he was between 24 and 25 years old; that his right leg had become totally and permanently useless; and bearing in mind the acute physical pain caused to the victim, and that he was earning $1.25 per day, the defendant-appellee is adjudged to pay to the plaintiff-appellant the sum of $2,500 as damages, with costs and $350 as attorney's fees.